<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRISTINE LIVESAY and NICHOLAS DeSIMONE**, <br><br> Plaintiffs, <br><br> v. <br><br> **PHILIP DUNTON MURPHY**, <br><br> Defendant. | Civil Action No. 20-17947 (ZNQ) (TJB) <br><br> **OPINION** |

<u>QURAISHI, District Judge</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss ("Motion) filed by

Philip Dunton Murphy ("Defendant").  (ECF No. 11.)  Christine Livesay and Nicholas DeSimone

("Plaintiffs") opposed the Motion, ("Opposition, ECF No. 15), to which Defendant replied,

("Reply," ECF No. 18.)  The Court has carefully considered the parties' submissions and decides

the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil

Rule 78.1.  For the reasons set forth below, the Court will GRANT Defendant's Motion to Dismiss.

I.      <u>BACKGROUND AND PROCEDURAL HISTORY</u>

On December 4, 2020, Plaintiffs began the instant action by filing their Complaint with the

Court.  ("Complaint," ECF No. 3.)  The Complaint alleges the unconstitutionality of Governor

Murphy's Executive Orders ("EO") 103, 104, 107, and 163.  Namely, Plaintiffs allege that due to

the EOs 103, 104, and 107, Plaintiff's pain management company "One Touch" was ordered to

temporarily close in light of the unprecedented COVID-19 pandemic.  (Compl. ¶ A1.)  According

1

to Plaintiff Livesay, by closing her business, "Governor Murphy violated the same [EO] for not implementing the compensation program mandated by the act" (*id*) because her business was an essential business to her clients. (*Id.* ¶ A3.) Plaintiff Livesay further alleges that, due to EO 104, her children's school's requirement of virtual learning caused "a huge mental, noticeable disturbance in the previous [sic] adapted routine of [her] children." (*Id*. ¶ A4.) Plaintiff Livesay's children not being in school has affected them academically and has exacerbated their preexisting health issues. (*Id*. ¶ A5.) Lastly, Plaintiff Livesay claims that due to EO 163, the requirements of social distancing and masking has caused her mental, emotional, and physical traumatization (*Id*. ¶ A7) and further caused her to face verbal, unlawful attacks. (*Id*. ¶ A16.) Similarly, Plaintiff DeSimone claims that EO 163 infringes on his "First Amendment religious rights" and also subjected him to unlawful harassment. (*Id*. ¶ B1–B5.) The Complaint further demands monetary damages, removal of Governor Murphy from office, recission of all "unconstitutional" EOs, prevention of future "unconstitutional" EOs, and that Governor Murphy be charged with domestic terrorism, child endangerment, and reckless endangerment of the general public. (*Id.* at 11.)

Defendant moves to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Namely, Defendant argues that Plaintiffs lack Article III standing "because they cannot demonstrate an injury in fact" (Moving Brief at 8, ECF No. 12-1) because they can neither establish a particularized injury (*id.*) nor demonstrate a likelihood of redressability if granted a favorable decision. (*Id.* at 11.) Defendant next argues that Plaintiffs have failed to state any due process claim. (*Id.* at 13.) The procedural due process claims fail because the EO was a rule of general applicability and because Plaintiffs failed to avail themselves of the remedies provided to them. (*Id.* at 15.) Plaintiffs' substantive due process claims fail because "neither the right to operate a business nor the property interest in a business license are

'fundamental' rights or property interests protected by substantive due process." (*Id.* at 17.) Defendant also argues that masking requirements do not violate the Fourteenth Amendment right to bodily integrity because they bear a rational relationship to a legitimate state objective. (*Id.* at 19.) Plaintiffs also fail to state a claim under the takings clause because the closure of Plaintiff Livesay's business was simply "a valid exercise of the broad police power bestowed upon state officials to prevent detrimental public harms by restricting Plaintiff's use of her property during a public health crisis. (*Id.* at 22.) Next, Defendant contends that Plaintiffs' 42 U.S.C. § 1985 conspiracy count fails to state a claim because they fail to adequately allege a conspiracy motivated by racial or class-based discriminatory animus. (*Id.* at 29.) Defendant lastly argues that qualified immunity precludes Plaintiffs' claims against the Governor (*id.* at 30) and "Plaintiffs' claims under federal statutory titles 4, 18, and 26 must be dismissed because there is no right to a private cause of action under these statutes." (*Id.* at 37.)

In opposition, Plaintiffs argue that they do have Article III standing because of the financial losses associated with the closing of Plaintiff Livesay's business, the emotional and physical harm her children suffered with virtual education, and the physical harm suffered from mandatory masking. (Opposition at 3.) As for the due process claims, Plaintiffs allege that they were unaware of the remedies available to them and infringed on their liberties. (*Id.* at 5.) Plaintiffs next argue that their right to bodily integrity was violated because the government should not have the power to force individuals to wear masks. (*Id.* at 6.) Furthermore, the temporary closure of Plaintiff Livesay's business was a taking by the government because it was an abuse of power by the government outside of the state's police powers. (*Id.* at 8–9.) Plaintiffs subsequently claim that they do have sufficient grounds to bring a claim under 42 U.S.C. § 1985(3) because Governor Murphy conspired with the New Jersey Department of Health Commissioner to implement covid

restrictions based solely on the Commissioner's recommendations.  (*Id.* at 10.)  Ultimately, Governor Murphy's EOs violated Plaintiffs' due process rights effectively destroying his qualified immunity.  (*Id.* at 11.)

On March 29, 2021, Defendant replied to Plaintiffs' opposition.  (ECF No. 18.)  Defendant initially reiterates that Plaintiffs fail to establish Article III standing because "they have not established an injury-in-fact or even an injury capable of being redressed by this Court."  (Reply at 2.)  "Plaintiffs also have failed to demonstrate that by closing non-essential businesses and requiring face coverings in public, Governor Murphy violated the Fourteenth Amendment."  (*Id.* at 4.)  Namely, "Plaintiffs' procedural due process claim is insufficient because the EOs at issue have general applicability, which does not give rise to the entitlement of procedural due process, and because Plaintiffs have failed to avail themselves of adequate procedural remedies."  *Id.*  Moreover, Plaintiffs' substantive due process claims fail because "neither the right to operate a business nor the property interest in a business license are 'fundamental' rights or property interests protected by substantive due process."  *Id.* at 5.  Plaintiffs' Fourteenth Amendment claims further fail because a presumption of validity attaches to every legislative enactment and "so long as 'the means chosen bear a rational relationship to a legitimate state objective and are not arbitrary, capricious, or unreasonable,' courts will sustain a government regulation against a substantive due process challenge."  *Id.* at 6.  On a similar note, Plaintiffs' equal protection rights have not been violated because courts apply a rational basis review to business closures and under that standard, Plaintiff Livesay's business closure was rationally related to a legitimate state interest in light of the COVID-19 pandemic.  *Id.* at 8.  Defendant subsequently argues that Plaintiffs fail to state a claim under the Takings Clause because there was no physical taking with respect to Plaintiff Livesay's business, "the challenged laws were a mere exercise of the police power to protect the public health, and the laws did not destroy all economically viable use of the property."  *Id.* at 9.  Plaintiffs' 42 U.S.C. § 1985 claim fails because they failed to show "in their Complaint that

some individual and the Governor 'colluded with the requisite racial or . . . otherwise class-based, invidiously discriminatory animus' as is necessary to state a claim" under § 1985(3).  *Id.* at 10–11. Lastly, Defendant argues that Plaintiffs do not meet their burden to overcome the qualified immunity defense on the grounds that the defendant did not violate a statutory or constitutional right.  *Id.* at 11.

## II.   <u>LEGAL STANDARD</u>

Article III, Section 2 of the Constitution limits the "judicial power" of the United States to the resolution of certain "cases" and "controversies."  *Valley Forge Christian Coll. v. Americans United for Separation of Church & State,* 454 U.S. 464, 471 (1982).  "The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request . . . in terms that have a familiar ring to those trained in the legal process."  *Id.*  The "case" or "controversy" requirement is enforced through a number of justiciability doctrines, which include standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions.  *Toll Bros., Inc. v. Twp. of Readington,* 555 F.3d 131, 137 (3d Cir. 2009).

A case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.  *A.S. v. Harrison Twp. Bd. of Educ.*, 66 F. Supp. 3d 539, 545 (D.N.J. 2014) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  In other words, "when it is no longer possible for this court to grant the relief requested, a case is moot and this court lacks jurisdiction to hear it."  *Lazur v. Moser*, Civ. No. 21-57, 2022 WL 2719473, at *1 (W.D. Pa. Mar. 11, 2022).  The mootness doctrine requires that "an actual controversy [is] extant at all stages of review, not merely at the time the complaint is filed."  *Steffel v. Thompson,* 415 U.S. 452, 459 n.10 (1974).  "'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (quoting *U.S. v. Concentrated Phosphate*

*Export Assn.,* 393 U.S. 199, 203 (1968)).  Mootness may not become an issue until the case has been brought and litigated.  *Id.* at 191.

A federal court must address the question of mootness, even though it was not raised by the parties, because it implicates Article III jurisdiction, and thus, a Court may raise *sua sponte* the issue of whether a suit presents a live case or controversy.  *New Jersey Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 30 (3d Cir. 1985);  *Luppino v. Mercedes Benz USA*, 718 F. App'x 143, 147 (3d Cir. 2017) (explaining that federal courts have a duty to determine mootness or abstract propositions, or to declare legal principles which cannot affect the ultimate issue in the case) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)); *Just In Time Chem. Sales & Mktg., Inc. v. Ironshore Specialty Ins. Co.*, Civ. No. 13-7127, 2014 WL 3784264, at *1 (D.N.J. July 31, 2014) ("A court may *sua sponte* dismiss a case on grounds of mootness").

Similarly, under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim.  *See* Fed. R. Civ. P. 12(b)(1).  "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Behar v. Murphy*, Civ. No. 20-5206, 2020 WL 6375707 at *2 (D.N.J. Oct. 30, 2020); *see also St. Thomas - St. John Hotel & Tourism Ass'n v. U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional.").  "On a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Ballentine v. United States*, Civ. No. 99-130, 2006 WL3298270 at *3–4 (D.V.I. Sep. 21, 2006) (internal quotation marks omitted).  To show standing, a plaintiff must establish: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct

6

complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016)).

## III.   DISCUSSION

### A.   MOOTNESS

The Complaint alleges that EOs 103, 104, 107, and 163 caused significant harm to both Plaintiffs.   Namely, Plaintiffs allege that the protective measures ordered by the EOs—social distancing, face coverings, and virtual schooling—caused Plaintiffs mental, emotional, and physical trauma.  (Compl. ¶¶ A1, B1–B5.)  In his Motion, Defendant does not address the mootness of Plaintiffs' claims.   At this juncture, the Court raises, *sua sponte*, the issue of mootness in light of the fact that the complained of EOs and safety measures have been rescinded since Plaintiffs filed their Complaint.   With respect to the issues of social distancing, mandatory masking, and virtual learning, the Court finds that these issues are moot for the reasons set forth below.

Courts in this district have already held that challenges to the Governor's EOs become moot after the challenged EO is rescinded.  *Behar*, 2020 WL 6375707 at *3.   Due to a decrease of reported COVID-19 cases, Governor Murphy issued various executive orders that lifted some of the restrictions on businesses and individuals previously imposed.   The Court takes judicial notice that EO 153 rescinded the stay-at-home order imposed by EO 107, and EO 154 allowed the resumption of personal care service facilities starting on June 22, 2020.  *See* N.J. Exec. Order No. 153 (June 9, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-153.pdf; *See also Arterbridge v. Wayfair, LLC*, Civ. No. 21-13306, 2022 WL 577956, at *6 n.5 (D.N.J. Feb. 25, 2022) (noting that a court may take judicial notice of a public document generally known within the jurisdiction which is not subject to reasonable dispute with respect to its accuracy or its source's accuracy);

*Mader v. Union Twp.*, Civ. No. 20-01138, 2021 WL 3852072, at *9 n.4 (W.D. Pa. Aug. 27, 2021),

reconsideration denied, Civ. No. 20-01138, 2021 WL 4805487 (W.D. Pa. Oct. 14, 2021) ("Courts

may take judicial notice of a governor's proclamations.")  Once a defendant terminates the alleged

unlawful conduct, "[t]he raison d'etre for the injunction no longer exists."  *Id.* (quoting *Black*

*United Fund of N.J., Inc. v. Kean*, 763 F.2d 156, 160 (3d Cir. 1985) (finding the case moot where

the statute challenged had been repealed and new legislation enacted)).  The same applies for EOs

103, 104, and 163 in this case.  The Court takes further judicial notice that on August 13, 2020,

Governor Murphy signed EO 175 which re-opened New Jersey school for in-person learning, on

May 17, 2021, EO 241 eliminated the mask requirement in outdoor public places, on May 24,

2021, EO 242 lifted major COVID-19 restrictions, on May 26, 2021, EO 243 fully rescinded EO

107, and on June 4, 2021, EO 244 ended the public health emergency established in EO 103.  As

the EOs at issue have been rescinded, no meaningful relief may be provided by the Court.

"Furthermore, the allegedly wrongful behavior cannot reasonably be expected to recur."

*Behar*, 2020 WL 6375707 at *3.  "This criterion has been interpreted to require more than

speculation that a challenged activity will be resumed."  *Thompson v. United States Dep't of Labor*,

813 F.2d 48, 51 (3d Cir. 1987) (citing *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975)).  Moreover,

whether the change was in response to the litigation "weighs against mootness."  *Fields v. Speaker*

*of the Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019).

Here, Governor Murphy has already issued numerous EOs easing restrictions in New

Jersey, and the change in policy is a clear response to the decreased number of COVID-19 cases

in New Jersey since EOs 103, 104, 107, and 163 were issued, not in response to Plaintiffs' suit or

for the purpose of evading the Court's review.  *See* N.J. Exec. Order No. 153 (June 9, 2020),

https://nj.gov/infobank/eo/056murphy/pdf/EO-153.pdf ("[I]t it is appropriate to lift the Order

requiring New Jersey residents to remain home or at their place of residence").  Indeed, the text of EO 153, which rescinded EO 107, explicitly states that the reopening process began because of the "decrease in the rate of reported new cases of COVID-19 in New Jersey, including a reduction in the total number of individuals being admitted to hospitals for COVID-19."  N.J. Exec. Order No. 153 (June 9, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-153.pdf.   "The statistics also confirm that Governor Murphy's reduction in restrictions was attributed to the decreasing number of COVID-19 positive cases, and clearly, not this litigation or some other related reasons." *Behar*, 2020 WL 6375707 at *3.  On March 21, 2020, when Governor Murphy issued EO 107, New Jersey reported 1,787 new cases according to the New Jersey Department of Health. *Id.*  New cases in New Jersey peaked on April 1, 2020, with a reported 4,846 positive COVID-19 tests. *Id.* On September 30, 2020, 432 new cases were reported. *Id.*

Even if COVID-19 infection rates rise, it is speculative that Defendant would implement new restrictions that would allegedly injure Plaintiffs. *Id.*  Indeed, Plaintiffs provide "no evidence to suggest that Governor Murphy intends to implement new restrictions imminently, let alone restrictions akin to the ones alleged in this action to have caused Plaintiffs' harm." *Id.*  More importantly, Plaintiffs' alleged harm from wearing a mask is specifically addressed and remedied by the challenged EO, which granted citizens a medical exemption if "the face covering would inhibit that individual's health."   N.J. Exec. Order No. 163 (June 9, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-163.pdf.  As such, the alleged injuries are based on nothing more than Plaintiffs' disagreement with the State's public health policies. *Behar*, 2020 WL 6375707 at *3 (dismissing case with prejudice because Plaintiff's challenges to Governor Murphy's EOs were moot).

B.       STANDING

Defendants argue that Plaintiffs lack standing because they cannot establish an injury-in-fact.  In response, Plaintiffs contend that they have demonstrated an injury-in-fact because mask wearing restricted their oxygen, virtual learning led Plaintiff Livesay's children to endure mental and emotional harm, and the closure of Plaintiff Livesay's business led to severe financial harm. (Opposition at 3.)  However, given Plaintiffs' failure to provide any evidence of a specific and concrete injury-in-fact beyond self-serving allegations, Plaintiffs' claims with respect to their challenges on social distancing, mandatory masking, and virtual learning must also be dismissed for lack of Article III standing.

To allege injury-in-fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Nickelodeon*, 827 F.3d at 272 (quoting *Finkelman*, 810 F.3d at 193) (internal quotations omitted).  A harm is "concrete" only "if it is 'de facto'; that is, it must actually exist"— it cannot be merely "abstract."  *Id*. (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).  To satisfy the injury-in-fact requirement, the injury must be "particularized," such that it affects the plaintiff in a "personal and individual way."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n. 1 (1992).  The Supreme Court has emphasized that the injury must also be "concrete in both a qualitative and temporal sense"; in other words, the "complainant must allege an injury to himself that is distinct and palpable, as opposed to merely [a]bstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical."  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal quotations and citations omitted).

To that end, allegations of a potential future injury, or the mere possibility of a future injury, will not establish standing.  *See id*. at 158; *Reilly v. Ceridian Corp*., 664 F.3d 38, 42 (3d Cir. 2011)

10

("Allegations of 'possible future injury' are not sufficient to satisfy Article III").  Given that injunctions regulate future conduct, a party seeking prospective injunctive relief, as is the case here, must demonstrate a "real and immediate" threat of future harm—not merely a speculative or hypothetical threat of future harm.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (finding the plaintiff lacked standing to enjoin police use of chokeholds absent sufficient likelihood that he would be wrongfully choked by police in the future); *Doe v. National Bd. of Med. Exam'rs* ("Doe II"), 210 F. App'x 157, 159–60 (3d Cir.2006) (finding plaintiff lacked standing to seek injunction barring disclosure of disabled status on medical examination scores, absent realistic, non-hypothetical fear that state licensing board would discriminate against him in the future due to disclosure).  "Past illegal conduct is insufficient to warrant injunctive relief unless it is accompanied by 'continuing, present adverse effects.'" *Doe II*, 210 F. App'x at 160 (citing *Lyons*, 461 U.S. at 102).  "Likewise, intentions to return to the source of the illegal conduct 'some day'— without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the requisite actual or imminent injury."  *Dempsey v. Pistol Pete's Beef N Beer, LLC*, Civ. No. 08-5454, 2009 WL 3584597 at *4 (D.N.J. Oct. 26, 2009) (internal quotations omitted) (citing *Lujan*, 504 U.S. at 564, where affiant lacked standing to seek injunction protecting endangered animals, because she merely professed intent to "some day" return to observe them, but had no "concrete plans" to do so).

Here, Plaintiffs alleges no imminent or impending injury to themselves.  Rather, they merely ask the Court to enjoin all future unconstitutional EOs and to further rescind EOs that have already been rescinded.  (Compl. at 11.)  This request for injunction of future, hypothetical harm is insufficient to establish Article III standing.  *Whitmore*, 495 U.S. at 155.

Both Plaintiffs also lack standing with regard to their challenges to the social distancing, mandatory masking, and virtual learning EOs because they have not caused a particularized harm against the plaintiffs. *Freedom from Religion Found. Inc.*, 832 F.3d at 478 ("standing requires that the plaintiff has a concrete grievance that is particularized *to him* and that the plaintiff is not one simply expressing generalized disagreement with activities in a place in which he has no connection") (emphasis added); *see also Kaetz v. United States*, Civ. No. 19-cv-8100, 2020 WL 7351219, at *8 (D.N.J. Dec. 15, 2020) (holding that Plaintiff lacked standing to challenge Governor Murphy's EOs because he did "not set forth facts identifying a cognizable personal injury"). First, courts in this circuit have already held that plaintiffs challenging mask mandates lack standing because these challenges are simply generalized grievances irremediable by the courts. *See, e.g.*, *Parker v.* Wolf, Civ. No. 20-1601, 2020 WL 7295831 (M.D. Pa Dec. 11, 2020). Plaintiffs further fail to meet the standing requirements because they do not allege that the challenged EOs harmed them in a personal and individual way relative to other state residents. *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 140, 145-46 (2011) (holding that "generalized grievances about the conduct of government," and a complaint that merely "disagrees with" a state's law is insufficient to establish an injury-in-fact). Ultimately, the alleged injuries with respect to the EOs regarding the social distancing, mandatory masking, and virtual learning are not redressable upon a favorable decision because the challenged EOs have been rescinded since Plaintiffs filed their complaint. *See infra.*

The Court does find, however, that Plaintiff Livesay has standing with respect to her monetary damages claim regarding the closure of her business. (Compl. ¶ A1.) The Court will consider next whether this claim for monetary damages against Governor Murphy is barred by qualified immunity.

### C.     QUALIFIED IMMUNITY

Qualified immunity is an affirmative defense that shields government officials who perform discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Defining the constitutional right at issue for qualified immunity purposes is critical in assessing whether or not that right was "clearly established." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  "Indeed, qualified immunity would be a worthless defense if a plaintiff could simply invoke a broad constitutional right—as here, 'due process'—that a defendant supposedly violated to overcome the hurdle." *Michaels v. New Jersey*, 50 F. Supp. 2d 353, 363 (D.N.J. 1999).  Once a defendant raises the defense of qualified immunity, it is the plaintiff's burden to delineate the constitutional right that was violated and show that it was clearly established at the time of the conduct at issue. *Id.* at 362.

Governor Murphy is a state official sued in his individual capacity. (Compl. at 2.)  The Court finds that he is entitled to qualified immunity on two grounds.  First, Plaintiffs failed to meet their burden to delineate the constitutional right that was violated.  *Id.*  In their Opposition, Plaintiffs simply reiterate that the constitutional right that was violated was their right to due process.  (Opposition at 11.)  Courts in this district have held that asserting a broad constitutional right such as "due process" is insufficient to overcome the hurdle of defining the constitutional right that was violated.  *Michaels*, 50 F. Supp. 2d at 363.  Second, the EOs, even those that

13

temporarily closed down non-essential businesses, were not unconstitutional.  The Supreme Court has recognized that "the power of the States to enact and enforce quarantine laws for the safety and the protection of the health of their inhabitants . . . is beyond question." *Compagnie Francaise de Navigation a Vapeur v. La. State Bd. of Health*, 186 U.S. 380, 387 (1902).  Consequently, many district courts around the country have upheld similar business-related EOs such as those challenged here.[1]  Accordingly, the Court concludes that Governor Murphy is entitled to qualified immunity from Plaintiffs' claim for money damages.  *Kaul v. Christie*, 372 F. Supp. 3d 206, 243 (D.N.J. 2019).

### D.   FEDERAL STATUTORY TITLE CLAIMS

Plaintiffs further allege claims against Defendant under federal statutory titles 4, 18, and 26.  (Compl. at 19.)  None of these claims, however, provide for a private cause of action.  Without a private cause of action, Plaintiffs do not have standing to bring these claims.  *Polaroid Corp. v. Disney*, 862 F.2d 987, 993 (3d Cir. 1988) ("If a private right of action exists in favor of a party, standing follows as a matter of course").

Specifically, Plaintiffs allege claims under "4 U.S.C. § 101, Oath by members of legislatures and officers" as a cause of action.  However, oath requirements for certain state officials under 4 U.S.C. §§ 101 and 102 do not create a private cause of action.  *See Zinnia Chen v. Lester*, 364 F. App'x 531 (11th Cir.), *cert. denied*, 562 U.S. 839 (2010).  As Plaintiffs are private citizens, they are barred from bringing a cause of action under 4 U.S.C. § 101.

---

[1] *See, e.g., League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 Fed. Appx. 125; *Bimber's Delwood v. James*, Civ. No. 20-1043, 2021 WL 235889 (W.D.N.Y. Jan. 25, 2021); *Big Tyme Invs., L.L.C. v. Edwards*, Civ. No. 20-30526, 2021 WL 118628 (5th Cir. 2021); *Local Spot, Inc. v. Cooper*, Civ. No. 20-421, 2020 WL 7554247 (M.D. Tenn. Dec. 21, 2020); *Stewart v. Justice*, Civ. No. 20-611, 2020 WL 6937725 (S.D.W.V. Nov. 24, 2020); *Antietam Battlefield KOA v. Hogan*, Civ. No. 20-1130, 2020 WL 6777590 (D. Md. Nov. 18, 2020); *Columbus Ale House v. Cuomo*, Civ. No. 20-4291, 2020 WL 6507326 (E.D.N.Y. Nov. 5, 2020); *Bill & Ted's Riviera v. Cuomo*, Civ. No. 20-1001, 2020 WL 6043991 (N.D.N.Y. Oct. 13, 2020); *Open Our Oregon v. Brown*, Civ. No. 20-773, 2020 WL 5371915 (D. Or. Sept. 8, 2020).

Plaintiffs attempt to assert multiple causes of action under Title 18: 18 U.S.C. §§ 241, 242, 1038, 1001, 1503, 1512, and 2071. However, these are criminal statutes that do not allow independent civil claims for the simple reason that private citizens do not have "authority to initiate a federal criminal prosecution; that power is vested exclusively in the executive branch." *United States v. Nixon*, 418 U.S. 683, 693 (1974). Similarly, 26 U.S.C. § 7214 is another criminal statute that is not actionable through a private claim. *See Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007); *Hanna v. Home Ins. Co*., 281 F.2d 298, 303 (5th Cir. 1960) (federal criminal statutes do not provide a basis for civil liability).

In light of the fact that all claims under Titles 4, 18, and 26 of the United States Code do not permit private causes of action, the Court will dismiss these claims.

## IV.    **CONCLUSION**

For the reasons stated above, the Court will GRANT Defendant's Motion to Dismiss. Given the nature of Plaintiffs' claims and the bases for the Court's dismissal of those claims, the Court further finds that any attempt to amend the Complaint would be futile. Accordingly, the dismissal will be with prejudice. An appropriate Order will follow.

Date: **September 30, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**